```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
GUCCI AMERICA, INC.,
CHLOE SAS, and
ALFRED DUNHILL LIMITED,

                        Plaintiffs,    07 Civ. 2438 (JGK)(DFE)

        - against -                    This is an ECF case

MYREPLICAHANDBAG.COM,                  REPORT AND RECOMMENDATION
WHOLESALEREPLICA.COM,                  TO JUDGE KOELTL
REPLICA-WATCH-TOWN.COM,
TRADERINASIA CONSULTING LLC,
KELVIN CHO a/k/a KELVIN CHO YAW COON
a/k/a "CHO YAW KOON",
["]ABC COMPANIES["], and
["]JOHN DOES["],

                        Defendants.
------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

  This is an uncontested inquest following a September 7, 2007 default judgment against the defendants. Gucci America, Inc. ("Gucci"), Chloe SAS ("Chloe"), and Alfred Dunhill Limited ("Dunhill") seek a permanent injunction and damages for the defendants' infringement of their trademarks and copyrights.

  On June 22, 2007, Judge Koeltl granted the plaintiffs' motion for a preliminary injunction. On September 7, 2007, he referred the case to me to conduct an inquest into damages, and to write a Report and Recommendation as to the amount of damages to be awarded against the defendants. On September 25, 2007, I mailed a Scheduling Order to the parties; my five envelopes to the five defendants were eventually returned by the Postal Service marked "not deliverable as addressed, unable to forward." Plaintiffs timely sent me copies of their inquest papers. My deadline for papers from the defendants was November 9, 2007; they have not sent me any papers.

BACKGROUND

  Upon the entry of a default judgment, the Court accepts as true all of the facts alleged in the Complaint, except those relating to the amount of damages. *See Au Bon Pain Corp. v.*

-1-

*Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Accordingly, I accept the following allegations as fact.

Gucci, Chloe and Dunhill are the sole and exclusive distributors in the United States of high-end luxury items bearing the well-known Gucci, Chloe and Dunhill trademarks. (Compl. ¶¶ 6-8, 19, 31.) Gucci is the owner of the rights and titles of the following federally registered trademarks: (1) Gucci; (2) Non-Interlocking GG Monogram; (3) Gucci Crest; (4) Green-Red-Green Stripe; (5) Square G; and (6) Repeating GG Design. (Compl. ¶¶ 20-22.) Chloe is the owner of the rights and titles of the following federally registered trademarks: (1) Chloe; (2) Chloe in Stylized Form; (3) Paddington; and (4) Silverado. (Compl. ¶¶ 24-26.) Dunhill is the owner of the rights and titles of the following federally registered trademarks: (1) Dunhill; (2) Dunhill in Stylized Form; and (3) Facet Watch – One Aspect. (Compl. ¶¶ 28-30.)

Without authorization, permission or licenses from the plaintiffs, defendants manufacture, distribute and sell counterfeit Gucci, Chloe and Dunhill goods. (Compl. ¶¶ 2, 4, 35-36, 48.) Their products use the same color schemes, patterns and designs as the plaintiffs' products, but are inferior in quality and workmanship. Moreover, their websites explicitly identify the counterfeit goods to be "Gucci," "Chloe," and "Dunhill" products. Hence, the defendants' actions have resulted in lost sales for the plaintiffs, and have caused confusion for consumers who may have thought that they were buying the plaintiffs' products instead of counterfeit products. (Compl. ¶¶ 2-4, 47, 50.) Plaintiffs claim that the defendants have "collectively sold, offered to sell and/or distributed at least 424 different types of goods bearing counterfeits of Plaintiffs' Marks" on their respective websites. (Compl. ¶ 52.)

## DISCUSSION

### Jurisdiction

Our Court has subject matter jurisdiction under 15 U.S.C. §1121(a) and 28 U.S.C. §§1331, 1338(a) and 1338(b). It also has personal jurisdiction over the defendants. *See* Judge Koeltl's June 22, 2007 Order denying the motion of defendant Kelvin Cho and defendant Traderinasia Consulting LLC to dismiss for lack of personal jurisdiction. Our Court has personal jurisdiction over the other defendants based on their shipments of goods (and their agreements to ship goods) to Yuliya P. Kuklina (a Manhattan-based private investigator retained by the plaintiffs) and to other customers in Manhattan and New York State. (Kuklina Decl. ¶¶ 11-

17 and Exhs. 1-2; ¶¶ 18-23 and Exhs. 3-6; ¶¶ 28-33 and Exh. 7; ¶¶ 34-39 and Exhs. 8-9; ¶¶ 40-45 and Exhs. 10-11; ¶¶ 46-51 and Exh. 12; ¶¶ 61-69 and Exh. 20; ¶¶ 70-75 and Exhs. 22-23; ¶¶ 78-84 and Exhs. 24-29; ¶¶ 85-90 and Exhs. 30-32; ¶¶ 91-94 and Exhs. 33-35; and Hogan 6/19/07 Decl. ¶ 2 and Exh. 1.) *See Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F.Supp. 433, 436-37 (S.D.N.Y. 1996) (Stein, J.).

Monetary Damages

The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services. 15 U.S.C. § 1117(c). Statutory damages may be awarded in the amount of:

> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than **$1,000,000 per counterfeit mark per type of goods or services sold**, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added). The statute "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (Marrero, J.), quoting *Louis Vuitton Malletier v. Veit*, 211 F.Supp.2d 567, 583 (E.D.Pa. 2002) and 15 U.S.C. § 1117(c). Judge Marrero continued:

> However, courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement. *See, e.g., Louis Vuitton,* 211 F.Supp.2d at 583; *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp.2d 161, 166 (S.D.N.Y. 1999). Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6)

>    "whether a defendant has cooperated in providing
>    particular records from which to assess the value of
>    the infringing material produced;" and (7) "the
>    potential for discouraging the defendant." *Fitzgerald
>    Pub. Co., Inc. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117
>    (2d Cir. 1986).

*Gucci America*, 315 F.Supp.2d at 520. Moreover, where "a defendant is shown to have acted wilfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.), adopted by Judge Cote on June 18, 2002. When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer. *Rodgers v. Anderson*, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.); *Tiffany v. Luban*, 282 F.Supp.2d 123, 124-25 (S.D.N.Y. 2003) (Marrero, J.).

In the case at bar, the defendants have not provided any information with respect to their actual sales. On December 4, 2007, my law clerk tried to access the defendants' websites. She discovered the following:

    1. The website for MyReplicaHandbag.com no longer exists.

    2. An ask.com search for wholesalereplica.com showed that the site was "active as it undergoes reconstruction." It referred her to other websites that sell replica products.

    3. An ask.com search for a close variant (Wholesale-Replica.com) showed that the site was active. She opened the category titled "Gucci Handbags," and was referred to the official Gucci website and to other internet websites that sell authentic and replica Gucci handbags. She then conducted a new search on the category titled "Fake Designer Hand Bags," and was referred to other internet websites that sell replica handbags.

    4. An ask.com search for replica-watch-town.com showed that the site was active. She typed in "Gucci" and was referred to the official Gucci website as well as other internet websites that are known to sell authentic Gucci handbags, such as www.neimanmarcus.com and www.saks.com. She then conducted a search for "Chloe" and was again referred to authentic dealers. However, when she went opened the "Replica Designer Watch" category, she was referred to UReplicas.com, which said that it sells 137 types of replica Gucci bags and 3 types of replica Dunhill cufflinks. Moreover, that site contained a testimonial

from "Amanda K. from New York," who bought a watch from UReplicas.

5. She was unable to access any websites for Traderinasia Consulting LLC. However, a search for Kelvin Cho listed his name and Traderinasia Consulting LLC on the website "SearchWarp.com." That entry had been updated one year earlier, on December 6, 2006, and the total readership of Kelvin Cho's articles was 30. The website said:

> Kelvin Cho is the well established self made successful e-traders [sic]; he is running a highly successful trading firm based on [sic] Guangzhou, China as well as an e-commerce consulting firm giving valuable and practical advices [sic] and guidance to online traders to maximize their sourcing and trading needs....

The site listed two other websites affiliated with Mr. Cho - – www.china-buysell.com and www.wholesale-asia.com. She was unable to access those websites due to security restrictions affecting computers in our Courthouse.

6. Kelvin Cho is an author for the website www.ezinearticles.com. That website said that Mr. Cho has been a basic member since November 23, 2006, and that there were "1,054 views" of his three active articles. It also said that Mr. Cho is affiliated with www.china-buysell.com, www.traderinasia.com, and www.wholesale-asia.com.

Because of defendants' default, the plaintiffs have only sketchy information about the defendants' actual sales figures and profits. (Pl. Memo. ¶¶ 109-11.) The Complaint, at ¶52, put the defendants on notice that "Defendants have collectively sold, offered to sell, and/or distributed at least 424 different types of goods bearing counterfeits of Plaintiffs' Marks." Elaborate details about those "different types" were provided at ¶¶6-10 of the 3/26/07 Declaration of Ms. Kuklina, which was served on the defendants along with the Complaint. Finally, the Complaint, at page 32, put the defendants on notice that the plaintiffs were seeking the maximum statutory damages of "$1,000,000 per counterfeit mark per type of goods ... sold." Accordingly, the plaintiffs assert that their maximum statutory damages would add up to $424 million ($1 million per type of good). They request "an award of at least $50,000 per type of counterfeit good sold, attempted to be sold, or distributed, for a total of $21.20 million." (Pl. Memo. ¶114.)

-5-

Under 15 U.S.C. §1117(b), the plaintiffs are entitled to reasonable attorneys' fees and costs, but they write: "Rather than order an additional award of attorneys' fees, however, the Court may take into account the need to compensate Plaintiffs for their attorneys' fees in setting the appropriate amount of statutory damages." (Pl. Memo. ¶ 120.)

I accept Paragraph 52 of the Complaint as a fact. However, there remains legal question: whether those 424 "types of goods" should be considered to be the "types of goods" for purposes of measuring damages within the meaning of 15 U.S.C. §1117(c)(2). For the purpose of awarding damages, it seems unduly artificial to categorize the merchandise into separate "types" for each subtle difference in a particular product's size, shape, color, pattern or fabric. (See Pl. Memo. ¶¶44-47, including the color illustrations.)  Instead, I believe that the separate "types" should be based on the functional purpose of the product. In my view, the evidence presented in the Complaint and in the Kuklina Declaration and in the inquest papers shows that the defendants sold replicas of the following types of goods: (1) handbags (Gucci and Chloe); (2) wallets (Gucci); (3) handbag and wallet sets (Gucci); (4) watches (Gucci and Dunhill); (5) eyeglasses (Gucci); and (6) belts (Gucci). (Compl. ¶¶ 36-45, 50; Kuklina Decl. ¶¶ 5-8, 11, 12, 17, 18, 52, 58, 78, 79 (Gucci handbags); ¶¶ 6-8, 28, 29, 33, 46, 47, 51, 61, 62 (Chloe handbags); ¶¶ 6, 18, 19, 24 (Gucci wallets); ¶¶ 85, 86 (Gucci handbag and wallet sets); ¶¶ 10, 34, 35, 39, 40, 41, 45, 91, 92 (Gucci watches); ¶¶ 9, 10, 70, 71, 75 (Dunhill watches);  ¶ 8 (Gucci eyeglasses); ¶¶, 61, 62, 69 (Gucci belts).)  Accordingly, I find that the defendants infringed a total of 6 different types of goods.

In determining statutory damages, one judge has awarded the maximum amount of $1,000,000 per mark per type of merchandise.[1]

---

[1] See *Nike, Inc. v. Top Brand Co. Ltd.*, 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) (Ellis, M.J.) (awarding $1,000,000 per infringed mark for each of four Nike trademarks, and consecutively for t-shirts, sweatshirts and polo shirts, i.e., $12,000,000), adopted by Chief Judge Wood on October 6, 2006. See also *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 n. 8 (S.D.N.Y. 2004) (Marrero, J.) (awarding $2,000,000 for two infringed marks under the Lanham Act and New York General Business Law § 349, but noting that "the maximum statutory damages" were "arguably higher than $2 million"); and *Phillip Morris USA, Inc. v. Marlboro Express*, 2005 WL 2076921, at * 6 (E.D.N.Y. Aug. 26, 2005) (Sifton, J.) (awarding $4,000,000 for four infringed marks, where it was estimated that the

-6-

Some judges have awarded $1,000,000 but with no multiplication for multiple marks. ² However, most judges have issued awards well below the maximums available on the basis of per-mark-per-type-of-goods. ³

In a case similar to the present one, Judge Kaplan adopted my recommendation and awarded statutory damages in the amount of $100,000 per mark infringed by the defendant. *Louis Vuitton Malletier v. WhenU.com, Inc.*, 2007 WL 257717, at *6 (S.D.N.Y. Jan. 26, 2007). He also agreed with my recommendation to decline the plaintiff's request for an award of punitive damages, attorneys' fees, and costs, because "the award of $1,100,000 [was] sufficient to compensate plaintiff for its damages, and to serve as a deterrent to Lushbags.com and its principals and others." *Ibid.*, *citing Fitzgerald Pub. Co. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986), and *Gucci America, Inc.*, 315 F.Supp.2d at 522-23.

In the case at bar, I find that a similar award is appropriate. Accordingly, I recommend that Judge Koeltl award the following damages to the plaintiffs:

---

defendant's counterfeiting operation earned $4,773,790 from at least 200,000 cartons of cigarettes).

² See *Rolex Watch U.S.A., Inc. v. Brown*, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) (Peck, M.J.); *Louis Vuitton Malletier v. Veit,* 211 F.Supp.2d at 584-85 (E.D. Pa. 2002) (awarding a total of $1,000,000 for six Louis Vuitton marks).

³ See *Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, 2007 WL 3287368, at *4 (S.D.N.Y. Nov. 7, 2007) (Gorenstein, M.J.) (awarding $250,000 per mark); *Chanel, Inc. and Louis Vuitton Malletier v. Craddock*, 2006 WL 1128733, at *1 (D.N.J. Apr. 27, 2006) (Ackerman, J.) (granting plaintiffs' request for statutory damages of $100,000 per mark per type of merchandise); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (Daniels, J.) (awarding statutory damages of $125,000 per infringed mark); *Rodgers v. Anderson*, 2005 WL 950021, at *4 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.) (awarding $250,000 for one mark); *Tiffany v. Luban*, 282 F.Supp.2d at 125 (S.D.N.Y. 2003) (Marrero, J.) (awarding a total sum of $550,000 for 28 separate counterfeit items, each of which infringed at least four trademarks); *Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.) (awarding $500,000 for nine Rolex marks and $100,000 for one Ralph Lauren mark), adopted by Judge Cote on June 18, 2002.

1. Gucci America, Inc. should receive an award of $3,600,000 ($100,000 x 6 marks x 6 types of goods) against the defendants, jointly and severally.

2. Chloe SAS should receive an award of $400,000 ($100,000 x 4 marks x 1 type of good) against the defendants, jointly and severally.

3. Alfred Dunhill Limited should receive an award of $300,000 ($100,000 x 3 marks x 1 type of good) against the defendants, jointly and severally.

<u>Injunctive Relief</u>

Plaintiffs seek to convert the preliminary injunction into a permanent injunction. "To obtain a permanent injunction, [the plaintiffs] must demonstrate (1) actual success on the merits, and (2) irreparable harm." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284 (S.D.N.Y. 2003) (Marrero, J.). In the case at bar, plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability. *Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, 2007 WL 3287368, at *6 (S.D.N.Y. Nov. 7, 2007) (Gorenstein, M.J.); *Dunkin Donuts, Inc. v. Peter Romanofsky, Inc.*, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (Azrack, M.J.).

Irreparable harm in a trademark infringement case is "established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Pitbull*, 2007 WL 3287368, at *6, *quoting Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987). Given the fact that the plaintiffs' marks have worldwide renown, the likelihood that a consumer would confuse the defendants' counterfeit products with the plaintiffs' products is very high, particularly since the defendants' websites "make liberal use of the Plaintiffs' Marks to make an explicit connection between their Counterfeit Products and Plaintiffs' Products." (Compl. ¶ 50.) For example, ¶ 79 of the Kuklina Decl. shows a picture of Myreplicahandbag.com that advertised a "GUCCI Vintage Shoulder Bag" and stated:

> ... This is authentic and brand new, beautiful Gucci beige signature GG monogram on jacquard fabric with dark green trim bag. ... The bag comes with a Gucci controllato card, serial number, take Care booklet and Gucci dust bag....

Hence, I find that the plaintiffs have shown irreparable harm, and I recommend that Judge Koeltl grant their request for a permanent injunction.

Pursuant to Judge Koeltl's 3/26/07 Temporary Restraining Order and 6/22/07 Preliminary Injunction Order, the plaintiffs froze more than $113,000 contained in various bank accounts associated with Mr. Cho. The details are set forth in the 8/22/07 Declaration of Howard S. Hogan, Esq., and in the Inquest Memorandum at ¶¶ 64-69. At ¶ 124, the Inquest Memorandum requests our Court to "compel payment" to the plaintiffs of those frozen assets, as partial satisfaction of the monetary judgment. Pursuant to Rule 64 of the Federal Rules of Civil Procedure, as amended effective December 1, 2007, and 15 U.S.C. § 1116(a), I recommend that Judge Koeltl grant this request.

Plaintiffs' last request is that our Court should order "that judgment apply to Defendants under all their aliases." (Pl. Memo. ¶¶ 125-26.) However, plaintiffs submit proof of only one alias: Traderinasia Sdn Bhd. That entity used the same Florida mailing address and fax number as the five defendants who were served. (Kuklina Decl. Exhs. 41 and 42.) Accordingly, I recommend that Judge Koeltl grant this request solely as to Traderinasia Sdn Bhd.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge Koeltl order as follows:

1. Award Gucci America, Inc. $3,600,000 against the defendants, jointly and severally.

2. Award Chloe SAS $400,000 against the defendants, jointly and severally.

3. Award Alfred Dunhill Limited $300,000 against the defendants, jointly and severally.

4. Grant a permanent injunction against the defendants and enjoin them from using any of the plaintiffs' trademarks or copyrights.

5. Award to the plaintiffs, as partial satisfaction of the monetary judgment, the defendants' assets that were "frozen" pursuant to the 3/26/07 Temporary Restraining Order and the 6/22/07 Preliminary Injunction Order. I recommend that the banks named in Paragraphs 64-69 of the Inquest Memorandum be ordered to

transfer the money contained in the specified bank accounts to Gibson, Dunn & Crutcher, LLP. Unless the plaintiffs agree among themselves to some other distribution, Gibson, Dunn & Crutcher, LLP will then distribute said money to the three plaintiffs *pro rata* based on the size of each plaintiff's monetary judgment against the defendants.

6. Order that the final judgment shall apply to Traderinasia Sdn Bhd, as well as to the five defendants that were identified in the caption of the Complaint. (I note that the "John Does" and the "ABC Companies" were not identified.)

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than February 14, 2008**) by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. John G. Koeltl, U.S.D.J. at Room 1030, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). Any request for an extension of time must be addressed to Judge Koeltl.

_____
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated:   New York, New York
         January 25, 2008

Copies of this Report and Recommendation are being mailed to:

Robert Weigel, Esq.
Howard S. Hogan, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166

-10-

MYREPLICAHANDBAG.COM
1903 60th Place, Suite M1049
Bradenton, Florida 34203

WHOLESALEREPLICA.COM
1903 60th Place, Suite M1049
Bradenton, Florida 34203

REPLICA-WATCH-TOWN.COM,
1903 60th Place, Suite M1049
Bradenton, Florida 34203

TRADERINASIA CONSULTING LLC,
1903 60th Place, Suite M1049
Bradenton, Florida 34203

KELVIN CHO a/k/a
KELVIN CHO YAW COON a/k/a
CHO YAW KOON
1903 60th Place, Suite M1049
Bradenton, Florida 34203

Hon. John G. Koeltl
Room 1030, U.S. Courthouse
500 Pearl Street
New York, New York 10007